*Sayers-Roods, et al. v. Machado (CAND, June 10, 2022)*

# **EXHIBIT DD**

DOCUMENTS SHOWING AN ACTIVE WORKING CONTRACT BETWEEN COSTANOAN INDIAN TRIBE OF INDIAN CANYON & FEDERAL TRANSIT ADMINISTRATION (2018-PRESENT)

[See also FTA-Costanoan Contract]

[See highlighted section at page 18 (i.e., "Ann-Marie Sayers"; "Costanoan"; "Indian Canyon")]

# PROGRAMMATIC AGREEMENT
# BETWEEN THE FEDERAL TRANSIT ADMINISTRATION AND
# THE CALIFORNIA STATE HISTORIC PRESERVATION OFFICER
# REGARDING THE BART SILICON VALLEY – PHASE II EXTENSION PROJECT
# IN SANTA CLARA COUNTY, CALIFORNIA

**WHEREAS,** FTA, as the lead Federal agency, has determined that the BART Silicon Valley – Phase II Extension Project constitutes an undertaking under 36 Code of Federal Regulations (CFR) § 800.16(y), which requires compliance with Section 106 of the National Historic Preservation Act (54 United States Code [U.S.C.] § 300101) and its implementing regulations in 36 CFR § 800; and the Santa Clara Valley Transportation Authority (VTA) plans to carry out the Bay Area Rapid Transit (BART) Silicon Valley – Phase II Extension Project (Undertaking) in Santa Clara County, California; and VTA is seeking financial assistance from the Federal Transit Administration (FTA); and

**WHEREAS,** the Undertaking consists of an approximately six (6)-mile extension of the BART system with four new stations, beginning at BART's Berryessa/North San José Station in the City of San José to the Santa Clara Caltrain Station in the City of Santa Clara; and FTA, in consultation with SHPO, has defined the Undertaking's area of potential effects (APE) as described in Attachment A; and

**WHEREAS,** FTA has consulted with the California State Historic Preservation Officer (SHPO) in accordance with the regulation implementing Section 106 of the National Historic Preservation Act of 1966 (36 CFR § 800.5) as amended regarding the Undertaking's potential to affect historic properties; has decided to prepare a Programmatic Agreement (Agreement) pursuant to 36 CFR § 800.4(b)(2) and 36 CFR § 800.14(b), and will file a copy of this Agreement with the Advisory Council on Historic Preservation (ACHP) pursuant to 36 CFR § 800.6(b)(iv); and

**WHEREAS,** FTA, in consultation with SHPO, has determined that CA-SCL-363H is eligible for inclusion in the National Register of Historic Places (NRHP) under criteria A and D and therefore, is a historic property as defined by 36 CFR § 800.16(l)(1); and

**WHEREAS,** thirty-two (32) individual architectural historic properties and one (1) historic district—the San José Downtown Commercial District Historic District, also known as the San José Commercial District—are within the APE as listed in Attachment B, and measures are included in this Agreement to avoid effects on these historic properties; and

**WHEREAS,** FTA in consultation with SHPO has determined preparation of this Agreement is the appropriate means to ensure the completion of the identification and evaluation of potential historic properties and the resolution of adverse effects on historic properties within the APE pursuant to 36 CFR § 800.4(b)(2) and 36 CFR § 800.5(a)(3), subsequent to the approval of the Undertaking, because the Undertaking consists of a corridor and large land areas and areas where access to properties is restricted, and the portions of the corridor include areas of sensitivity for buried archaeological deposits ; and

**WHEREAS,** FTA has consulted with the Native American Heritage Commission and Native American groups—including the Muwekma Ohlone Indian Tribe of the San Francisco Bay Area, the Ohlone Indian Tribe, the Trina Marine Ruano Family, the Amah Mutsun Tribal Band, the Indian Canyon Mutsun Band of Costanoan, the Amah Mutsun Tribal Band of Mission San Juan Bautista, and other group, including Ohlone Individuals, Northern Valley Yokuts, Bay Miwok,

Plains Miwok, and/or Patwin, who may attach religious or cultural importance to affected properties and who have been consulted (pursuant to 36 CFR § 800.2 (c)(2)(ii)(A-F)) regarding the cultural sensitivity of the project area—and have invited these Native American groups and individuals, who are not federally recognized tribes and are Consulting Parties, to be Concurring Parties to this Agreement; and the Amah Mutsun Tribal Band has deferred to the Muwekma Ohlone Indian Tribe of the San Francisco Bay Area; and no Federally recognized Indian tribes (as identified in 36 CFR § 800.16(m)) expressed an interest in consulting on the Undertaking; and

**WHEREAS**, FTA and VTA consulted with Consulting Parties, including twenty-six (26) local government officers, historical organizations, and individuals interested in historic preservation in Santa Clara County about the Undertaking and its effects on historic properties; and the Peninsula Corridor Joint Powers Board (JPB) and the South Bay Historical Railroad Society (SBHRS) have been invited to be Concurring Parties to this Agreement because JPB is the property owner of the historic San José (Diridon) and Santa Clara Caltrain Stations and the SBHRS is the preservation covenant holder for the protection of these resources as granted in 1992 by the California Department of Transportation (Caltrans) when it transferred ownership and operation of Caltrain to the JPB by Memorandum of Agreement; and

**WHEREAS**, in accordance with 36 CFR § 800.6(a)(1), FTA has notified the Advisory Council on Historic Preservation (ACHP) of its intent for the phased identification of historic resources and a Programmatic Agreement will be prepared, and the ACHP has chosen not to participate in the consultation pursuant to 36 CFR § 800.6(a)(1)(iii) as stated in their February 6, 2017 letter; and

**WHEREAS**, VTA, as the grantee and project sponsor, is an Invited Signatory to this Agreement; and

**WHEREAS**, California Department of Transportation (Caltrans) District 4 has participated in the consultation; the Undertaking crosses under United States Highway 101 (US 101), California State Route 87 (SR 87), and Interstate 880 (I-880) owned and administered by Caltrans District 4; an encroachment permit from Caltrans District 4 is necessary for portions of the Undertaking that cross these facilities; and Caltrans District 4 has been invited to participate in this Agreement as an Invited Signatory; and

**WHEREAS**, the City of San José and City of Santa Clara have participated in the consultation; own property that will be acquired by the Undertaking and the local street right-of-way that will be modified by the Undertaking; many of the historic properties subject to this Agreement are located within the City of San José and City of Santa Clara; and have been invited to participate in this Agreement as Concurring Parties; and

**NOW, THEREFORE,** FTA and SHPO agree that, upon FTA's decision to proceed with the Undertaking, FTA shall ensure that that the Undertaking is implemented in accordance with the following Stipulations to take into account the effects of the Undertaking on historic properties; and further agrees that these Stipulations shall govern the Undertaking and all of its parts until this Agreement expires or is terminated.

**STIPULATIONS**

I. **ROLES AND RESPONSIBILITIES**

   A. <u>FEDERAL TRANSIT ADMINISTRATION</u>

   FTA will ensure that the terms of this Agreement are carried out and will require, as a condition of any approval of Federal funding for the Undertaking, adherence to the Stipulations set forth herein.

   As the lead Federal agency, FTA shall be responsible for ensuring the provisions of the Agreement are completed and consistent with requirements of 36 CFR Part 800. FTA shall be responsible for the following:

   1. Make all determinations of eligibility for historic properties and findings of effect of the Undertaking and participate in the resolution of adverse effects and disputes.

   2. Determine the APE in consultation with VTA, SHPO, and all Parties to the Agreement pursuant to Stipulation II; modify the APE as necessary to account for project changes in accordance with Stipulation II; and notify all Parties to the Agreement of any change to the APE.

   3. Conduct government-to-government consultation with Federally-recognized Native American tribes.

   4. Consult with non-Federally-recognized Native American tribes and individuals, other Consulting Parties, the public, and local governments, as appropriate.

   5. Coordinate with VTA to circulate documents, comments on documents, and final documents among all the Parties to this Agreement and any Concurring Parties that choose not to sign the document, as appropriate as stipulated.

   6. Maintain documentation of Section 106 compliance in coordination with VTA.

   7. Respond to written requests from other Federal agencies under 36 CFR § 800.2(a)(2). If FTA receives a written request from another Federal agency that intends to carry out, fund, license, permit, or approve an Undertaking covered by this Agreement, FTA shall notify SHPO and VTA of such request within fifteen (15) calendar days. FTA may invite such Federal Agency to become a Signatory Party to the Agreement pursuant to 36 CFR § 800.6(c)(2). If such Federal agency agrees to become a Signatory Party, FTA shall comply with Stipulation IX.D to amend this Agreement.

   B. <u>SANTA CLARA VALLEY TRANSPORTATION AUTHORITY</u>

   As the project proponent and an Invited Signatory, VTA shall be responsible for the following:

   1. Coordinate all activities described in the Agreement to carry out the Stipulations below.

   2. Consult with FTA, SHPO, and all Parties to the Agreement as appropriate, in planning and implementing the Stipulations of this Agreement.

   3. Submit all documents required by this Agreement as stipulated, for review.

4. Ensure that all treatment measures developed by VTA as a result of consultation are compliant with government-wide policies and regulations.

5. Ensure that all historic preservation and archaeological work are performed by, or under the direct supervision of, a person or persons who meet, at a minimum, the Secretary of the Interior's Professional Qualifications Standards (48 Federal Register 44738–44739) (Appendix A to 36 CFR § 61) in the relevant field of study, as described under the Administrative Provisions of this Agreement. Hereinafter, such persons will be referred to as Qualified Professionals (QPs).

C. CALTRANS DISTRICT 4

As an Invited Signatory, Caltrans District 4 shall be responsible for the following:

1. Coordinate with FTA and VTA as described in the Agreement to carry out the Stipulations below. VTA and FTA will consult with Caltrans District 4 for any archaeological resources discovered within Caltrans District 4 right-of-way.

II. AREA OF POTENTIAL EFFECTS (APE)

The APE for the Undertaking is depicted in Attachment A of this Agreement. The APE may be amended in consultation among the Parties to this Agreement without amending the Agreement proper.

As the Undertaking progresses, design changes or modifications may be necessary. VTA shall inform FTA of any such design changes or design modifications. FTA will determine if the design changes or modifications affect additional areas that would necessitate modifications of the APE. If FTA determines additional areas would be affected, FTA will submit a modified APE to SHPO and to all Parties to this Agreement and will follow the review process in Stipulation VII. Disputes will be resolved in accordance with Stipulation IX.C.

III. PHASED IDENTIFICATION, EVALUATION, AND TREATMENT OF ARCHAEOLOGICAL RESOURCES

FTA and VTA shall ensure that identification, evaluation, assessment of adverse effects, and treatment to resolve adverse effects to historic properties of archaeological sites as a result of construction activities is conducted pursuant to *VTA's BART Silicon Valley— Phase II Extension Project Archaeological Resources Treatment Plan (ARTP)* (Far Western 2018). The ARTP is appended to this Agreement as Attachment C. The ARTP identifies the scope of fieldwork for exploratory testing, testing/evaluation, data recovery/mitigation, analytical methods, and documentation; thresholds of eligibility; a schedule for implementation; inadvertent discovery protocol; protocol for the treatment of human remains; and protocol for consultation with SHPO and Consulting Parties. Any Party to this Agreement may propose to update the ARTP; this will not require amendment of this Agreement. Updates to the ARTP shall follow the process outlined in Stipulation VII. Disputes will be resolved in accordance with Stipulation IX.C.

A. PHASED IDENTIFICATION OF ARCHAEOLOGICAL RESOURCES

1. Due to the lack of surface visibility and potential for subsurface archaeological resources within the APE, a phased approach of identification will involve exploratory testing after property acquisition and demolition, prior to construction.

2. Locations identified for testing, based on researched high or very high surface and subsurface sensitivity, or identification of historic-era sensitivity zones, will include mechanical trenching/coring by a qualified geoarchaeologist or historical archaeologist, aerial exposure as necessary, and hand excavation where warranted. For locations identified for testing based on high sensitivity for prehistoric archaeological resources, Native American monitoring will be conducted.

3. If eligible or assumed eligible archaeological resources are identified as a result of test excavations or during construction, avoidance will be the first priority with the establishment of an Environmentally Sensitive Area (ESA) designation that will protect the resource from any potential effects during construction. No work can take place within the ESA's horizontal or vertical extent. Any additional testing will be limited to delineating site boundaries. The process outlined in Chapter 6 – Implementation Plan, Environmental Sensitive Area Designation, of the ARTP shall be followed.

4. If archaeological resources are identified that do not meet the thresholds of eligibility for listing in the NRHP under Stipulation III.B., no further consideration will be given under the terms of this Agreement.

5. If archaeological resources are identified that meet the thresholds of eligibility under Stipulation III.B, they will be considered eligible for listing in the NRHP, and if they cannot be protected and avoided in place, the evaluation, assessment of effects, and mitigation of adverse effects approach presented in Chapter 6 – Implementation Plan, Thresholds of Eligibility, of the ARTP will be followed.

B. <u>EVALUATION</u>

FTA, in coordination with VTA, shall prepare evaluations of archaeological resources for their eligibility for listing in the NRHP within the APE. If sites can be avoided and/or protected, or cannot be evaluated in their entirety, FTA may treat them as eligible for inclusion in the NRHP for the purposes of the Undertaking. The following thresholds will be used to make eligibility recommendations in the field by QPs. The Chapter 6 – Implementation Plan, Thresholds of Eligibility, of the ARTP includes a more thorough discussion about the protocols for evaluating resources for eligibility for the NRHP.

1. It is often not possible to determine whether prehistoric sites and features are eligible for the NRHP until laboratory studies have been completed and analyzed. Therefore, any prehistoric site or feature will be assumed eligible for the NRHP under Criterion D until laboratory studies have been completed, except as noted under Stipulation III.B.2. To the extent possible, FTA shall consult with Native American tribes that may attach religious or cultural significance to the historic property to determine if the site has values that may qualify it as NRHP eligible under Criteria A, B, or C in addition to, or instead of, Criterion D.

2. Excluded prehistoric artifacts include isolated items (<3 items within a 100 square-meter area), redeposited material without human remains, and artifact scatters without temporally diagnostic items.

3. Excluded historic-era resources include ubiquitous infrastructure elements such as modern utilities (cistern, electric, gas, sewer, and water supply lines), transportation

infrastructure (bridge piers, buried roadways, and rail segments), sidewalks, and concrete rubble, fill, or waste. These have little research value, therefore will not be considered eligible for the NRHP under any criteria. Isolated refuse dumps or scatters over 50 years of age that lack specific associations will not be considered eligible for the NRHP. All such resources will be given no further consideration under the terms of this PA.

4. The evaluation will apply the AIMS-R approach—Association, Integrity, Materials, Stratigraphy, Rarity—which establishes principles for evaluating historic-era archaeological deposits.

5. FTA shall make determinations of eligibility in accordance with the NRHP criteria set forth in 36 CFR § 60.4 for all potential historic properties within the APE that are consistent with the *Secretary of the Interior's (SOI) Standards and Guidelines for Archeology and Historic Preservation* as outlined in Chapter 6 – Implementation Plan, Thresholds of Eligibility, of the ARTP.

6. The VTA shall prepare cultural resources inventory and evaluation report(s) for resources evaluated in the identification efforts as outlined in Stipulation III.A. FTA shall ensure that copies of draft inventory and evaluation reports are submitted concurrently to all Parties of this Agreement for review and comment in accordance with Stipulation VII. FTA shall consider recommendations made by all Parties in their determination of eligibility. Comments shall be considered and addressed in accordance with Stipulation VII.

7. FTA, or VTA on FTA's behalf, within thirty (30) calendar days of approval of the final inventory and evaluation reports shall provide a copy of the final reports to all Parties of this Agreement. FTA shall submit the document to SHPO for review and concurrence in accordance with Stipulation VII.

8. If FTA and SHPO are unable to agree on the NRHP eligibility of a resource, FTA shall obtain a determination from the SOI in accordance with 36 CFR § 800.4(c)(2). The determination of the SOI shall be final for the purposes of this Agreement.

C. ASSESSMENT OF EFFECTS

1. FTA will make a preliminary assessment of effects on any properties identified, listed, eligible, or considered eligible for the NRHP within the APE, by applying the criteria of adverse effect, pursuant to 36 CFR § 800.5(a), and in accordance with Chapter 5 – Research Design, Criteria for Determining Significance of Effects, of the ARTP. FTA shall coordinate this preliminary assessment of effects with the identification efforts as outlined in Stipulation III.A. FTA may incorporate the Finding of Effects (FOE) into inventory and evaluation reports, if enough information is available to make a finding.

2. FTA shall ensure that copies of the draft FOE are submitted concurrently to all Parties to this Agreement for review and comment in accordance with Stipulation VII. FTA shall consider recommendations on the draft FOE made by all Parties to the Agreement.

3. FTA shall revise the FOE as appropriate, and distribute it to all Parties of this Agreement and submit the FOE to SHPO for review and concurrence in accordance with Stipulation VII.

4. If the Signatory Parties are unable to reach agreement on the FOE, FTA shall resolve the disagreement in accordance with Stipulation IX.C.

D. <u>TREATMENT OF HISTORIC PROPERTIES</u>

Pursuant to 36 CFR § 800.6(a), FTA shall consult with all Parties to this Agreement to develop and evaluate measures that could avoid, minimize, or mitigate adverse effects on historic properties that are identified under Stipulation III.A. Consultation will follow the process outlined in Stipulation VII and Stipulation III.B.1 as appropriate. FTA will implement mitigation or treatment measures as described in the ARTP as appropriate.

Any part of the historic property (vertical and horizontal extent) not affected by construction will be protected as an ESA, in accordance with the ARTP, to ensure that no work takes place within those areas as outlined in Stipulation III.A.3.

E. <u>CONSTRUCTION MONITORING</u>

Per Chapter 5, Implementation Plan - Construction Plan, of the ARTP, monitoring is only recommended in contexts where identification efforts employed coring for subsurface deposits (because trenching was not feasible) which would not obtain a sufficient number of samples to clearly ascertain that no prehistoric deposits were present. Archaeological monitoring may also be necessary when archaeological testing is recommended close to existing utilities, but the utility provider will not grant access to test for safety reasons. In these circumstances, FTA will work with the utility company to provide an archaeological monitor as the utility company conducts the utility work.

1. Archaeological monitoring of construction activities will be conducted by a QP, familiar with the procedures and conditions presented in the ARTP, including, but not limited to, inadvertent discoveries, thresholds of eligibility, and FTA and VTA roles and responsibilities.

2. The Archaeological Monitor will observe soil disturbance during construction activities (e.g., manual or machine excavations, grading). The monitor will observe consistency or changes in soils or may examine specific materials that may be cultural in origin.

3. Should a resource be identified, it will be evaluated per Stipulations III.A and III.B, followed by determination of eligibility, assessment of effects, and treatment, per Stipulations III.C and III.D as appropriate.

4. Observations will be performed by the Archaeological Monitor in accordance with all appropriate and applicable safety requirements and laws.

F. <u>TREATMENT AND DISPOSITION OF ARCHAEOLOGICAL MATERIALS</u>

1. Archaeological materials will be treated in accordance with the laboratory procedures described in the ARTP, with consideration of redundancy of material, relevance to stated research issues, given space issues in curation facilities.

2. Upon completion of the final project documents, archaeological materials deemed suitable per the ARTP, will be curated at a facility that meets federally recognized standards.

IV. **ARCHITECTURAL HISTORIC PROPERTIES**

VTA will retain the services of QP(s) that meet the professional qualifications in Stipulation IX.A.2 in architectural history or historic architecture to review project designs and design changes adjacent to architectural historic properties and within the San José Downtown Commercial District Historic District. VTA will include the Cities of San José and Santa Clara in the selection of the QPs. The QP's review will ensure the preservation of character-defining features of the historic properties and historic fabric of the historic district. If the design changes have the potential to affect historic properties, FTA will consult with all Parties to this Agreement to develop and evaluate measures that could avoid, minimize, or mitigate adverse effects on historic properties in accordance with Stipulations III.C and III.D.

If inadvertent effects to architectural historic properties occur during or after construction as a result on this Undertaking, the damage will be documented and subject to Stipulation VI.

V. **NATIVE AMERICAN CONSULTATION**

FTA has consulted with the Native American Heritage Commission (NAHC) and with individuals and groups identified by the NAHC regarding the proposed Undertaking and its effects on historic properties. These groups include the Muwekma Ohlone Indian Tribe of the San Francisco Bay Area, the Ohlone Indian Tribe, the Trina Marine Ruano Family, the Amah Mutsun Tribal Band, the Indian Canyon Mutsun Band of Costanoan, the Amah Mutsun Tribal Band of Mission San Juan Bautista, and other groups including Ohlone Individuals, Northern Valley Yokuts, Bay Miwok, Plains Miwok, and/or Patwin. FTA will continue to consult with these individuals and groups and will afford them, should they so desire, the opportunity to participate in the implementation of the Agreement and of the Undertaking.

Native American tribes or individuals will be invited to provide monitoring during archaeological testing within areas identified with high prehistoric archaeological sensitivity and to provide input on the identification, evaluation, and proposed treatment of historic properties, including but not limited to archaeological sites, as stipulated elsewhere in the document. FTA and VTA will extend invitations for input through such means as letters of notification, public meetings, and/or site visits. FTA and VTA will allow reviewers thirty (30) calendar days to respond from the receipt of a document, unless otherwise stipulated. Failure by any reviewer to comment within this time period shall not preclude FTA and VTA from proceeding or allowing draft reports to be finalized or proceeding with final treatment protocols to resolve adverse effects.

VI. **LATE DISCOVERIES AND UNANTICIPATED EFFECTS**

A. If FTA determines, during implementation of the ARTP or after construction of the Undertaking has commenced, that either the implementation of the ARTP or the Undertaking will affect a previously unidentified property that may be eligible for the NRHP, or affect a known historic property in an unanticipated manner, FTA and VTA will address the discovery or unanticipated effect in accordance with 36 CFR

§ 800.13(b) and the ARTP for archaeological resources. FTA, pursuant to 36 CFR § 800.13(c), may assume any unanticipated discovered property to be eligible for inclusion in the NRHP, as noted in Stipulation III.

B. For properties determined eligible or assumed to be eligible pursuant to Stipulation VI.A above, FTA will notify all Parties to this Agreement of those actions that it proposes to avoid, minimize, or mitigate adverse effects. All Parties will have forty-eight (48) hours to provide their comments on the proposed actions. FTA will ensure that the recommendations are taken into account prior to granting approval of the measures that VTA will implement to resolve adverse effects. FTA will provide the Parties to this Agreement notification of the measures to be implemented. VTA will carry out the approved measures prior to resuming construction activities in the location of the discovery.

C. FTA will notify SHPO within forty-eight (48) hours if human remains are found and will also notify Caltrans District 4 if any are encountered within their right-of-way.

D. Any human remains and related items discovered during the implementation of the terms of this Agreement and of the Undertaking will be treated in accordance with the requirements of Section 7050.5(b) of the California Health and Safety Code. If, pursuant to Section 7050.5(c) of the California Health and Safety Code, the county coroner/medical examiner determines that the human remains are or may be of Native American origin, then the discovery will be treated in accordance with the provisions of Section 5097.98(a)-(d) of the California Public Resources Code. FTA, in coordination with VTA, will ensure that the remains are not damaged or disturbed further until all Stipulations in Section 7050.5 and Section 5097.98 have been met.

E. FTA will ensure that the expressed wishes of Native American individuals, tribes, and organizations are taken into consideration when decisions are made regarding the disposition of other Native American archaeological materials and records relating to Indian tribes.

F. FTA will coordinate with the property owner regarding the archaeological resources or disposition of human remains discovered on their property or within their right-of-way. Caltrans District 4 will participate in decisions regarding the disposition of any archaeological resources or human remains discovered within its right of way.

VII. **REPORTING REQUIREMENTS AND REVIEW PROCEDURES**

A. **Review Procedures.** For all documents and deliverables produced in accordance with this Agreement, FTA shall have thirty (30) calendar days to review. After completing its review, FTA shall provide a draft document to all Parties of this Agreement for a thirty (30) calendar-day review and comment period, while respecting confidentiality concerns of all Parties to this Agreement in accordance with Stipulation IX.B. Any written comments provided within the thirty (30) calendar day review and comment period shall be considered in the revision of the document or deliverable. FTA may extend this review and comment period up to an additional thirty (30) calendar days, if requested.

FTA shall document and report the substantive written comments received for the document or deliverable and how comments were addressed. FTA shall provide the comments and response document with a final document or deliverable to SHPO for

review and concurrence. Should SHPO determine that the final document or deliverable does not meet the standards set forth in 36 CFR § 800.11(a), the Signatory Parties shall continue to consult on the document or deliverable.

Failure of any Party to this Agreement to respond within thirty (30) calendar days of any submittal shall not preclude FTA from proceeding to the next step in this Agreement.

Should FTA and SHPO be unable to reach agreement on the final document or deliverable submitted for concurrence, FTA and SHPO shall consult for a period not to exceed fifteen (15) calendar days following the receipt of SHPO's written objection in an effort to come to agreement on the issues to which SHPO has objected. Should SHPO and FTA be unable to agree on the issues to which SHPO has objected, SHPO and FTA shall proceed in accordance with Stipulation IX.C, below. The timeframe to consult to resolve a disagreement or objection may be extended by mutual consent between FTA and SHPO.

FTA may address multiple steps in 36 CFR § 800.3-800.6 with a request for expedited consultation pursuant to 36 CFR § 800.3(g). SHPO shall have thirty (30) calendar days to respond.

B. **Final Report for Completion of ARTP.** Within 12 months after FTA has determined that all fieldwork required by Stipulation III has been completed, FTA will ensure preparation, and subsequent concurrent distribution to the Parties of this Agreement for review and comment, the draft report that documents the results of implementing and completing the ARTP. The other Parties to this Agreement will be afforded 30 days following receipt of the draft technical report to submit and written comments to FTA. Failure of these Parties to respond within this time frame shall not preclude FTA from authorizing revisions to the draft technical report, as FTA may deem appropriate. FTA will provide the other Parties to this Agreement with written documentation indicating whether and how the draft technical report will be modified in accordance with any comments received from the other Parties to this Agreement. Unless any of the Parties to this Agreement objects to this documentation in writing to FTA within 30 days following receipt, FTA may modify the draft technical report, as FTA may deem appropriate. Thereafter, FTA may issue the report in final form and distribute this document in accordance with Section C of this Stipulation.

C. Copies of the final technical report documenting the results of the ARTP implementation will be distributed by FTA to the other Parties to this Agreement, to the Northwest Information Center of the California Historic Resources Information System (CHRIS), and to interested tribes.

## VIII. ANNUAL REPORT

In addition to the final reports described within Stipulation VII, FTA shall provide the Parties to this Agreement an annual update on the implementation of this Agreement. Such update shall include any scheduling changes proposed, any problems encountered, failures to adopt proposed mitigation measures, and any disputes and objections received in FTA's efforts to carry out the terms of this Agreement. The update will be due no later than December 31st of each year, beginning December 31, 2018 and will continue annually thereafter throughout the duration of this Agreement. The review of the Annual Report by

all Parties to this Agreement shall follow the procedure outlined in Stipulation VII. FTA shall ensure that one or more meetings are held to facilitate review and comment, to address questions, or to resolve comments. FTA will notify and coordinate with all Parties to the Agreement within 30 days of the distribution of the annual report to schedule the annual meeting.

## IX. ADMINISTRATIVE PROVISIONS

### A. STANDARDS

1. **Definitions.** The definitions provided in 36 CFR § 800.16 are applicable throughout this Agreement.

2. **Professional Qualifications.** VTA will ensure that historic, architectural, ethnographic, and archaeological work conducted pursuant to this Agreement is carried out by, or under the direct supervision of, persons meeting or exceeding the pertinent qualifications set forth in the Secretary of the Interior's Professional Qualification Standards (36 CFR § 61) in those areas in which the qualifications are applicable for the specific work performed.

   VTA will ensure that only individuals meeting the Secretary of the Interior's Professional Qualification Standards in the relevant field of study carry out or review appropriateness and quality of the actions and products required by this Agreement. However, nothing in this Stipulation may be interpreted to preclude FTA or any agent or contractor thereof from using the properly supervised services of persons who do not meet the Professional Qualification Standards.

3. **Documentation Standards.** Written documentation of activities prescribed by Stipulation VII of this Agreement will conform to the Secretary of the Interior's *Standards and Guidelines for Archaeology and Historic Preservation* as amended and annotated (48 CFR § 44716-44740), as well as to applicable standards and guidelines established by SHPO.

4. **Curation Standards.** FTA will ensure that, to the extent permitted under Sections 5097.98 and 5097.991 of the California Public Resources Code, the materials and records resulting from the activities prescribed by this Agreement are curated in accordance with 36 CFR § 79. FTA will ensure that, to the extent permitted by applicable law and regulation, the views of the Most Likely Descendant(s) are taken into consideration when decisions are made about the disposition of other tribal archaeological materials and records.

### B. CONFIDENTIALITY

The Parties to the Agreement acknowledge that the historic properties covered by this Agreement are subject to the provisions of Section 304 of the National Historic Preservation Act and Section 6254.10 of the California Government Code (Public Records Act), relating to the disclosure of archaeological site information and, having so acknowledged, will ensure that all actions and documentation prescribed by this Agreement are consistent with said sections.

C. DISPUTE RESOLUTION

1. Should any Party to this Agreement object at any time to any actions proposed or the manner in which the terms of this Agreement are implemented, FTA shall consult with such Party to resolve the objection. If FTA determines that such objection cannot be resolved, FTA will:

    a. Forward all documentation relevant to the dispute, including FTA's proposed resolution, to the ACHP. The ACHP shall provide FTA with its advice on the resolution of the objection within thirty (30) days of receiving adequate documentation. Prior to reaching a final decision of the dispute, FTA shall prepare a written response that takes into account any timely advice or comments regarding the dispute from the ACHP or any Party to this Agreement and provide them with a copy of this written response. FTA will then proceed according to its final decision.

    b. If the ACHP does not provide its advice regarding the dispute within the thirty (30) day time period, FTA may make a final decision on the dispute and proceed accordingly. Prior to reaching such a final decision, FTA shall prepare a written response that takes into account any timely comments regarding the dispute from any Party to this Agreement and provide them and the ACHP with a copy of such written response.

    c. FTA's responsibility to carry out all other actions subject to the terms of this Agreement that are not the subject of the dispute remain unchanged.

2. Public Objections. At any time during implementation of the measures stipulated in this Agreement, should a member of the public raise an objection in writing pertaining to such implementation to any Party to this Agreement, that Party shall notify FTA. FTA shall notify all Parties to this Agreement in writing of the objection. Any Party to this Agreement may choose to comment in writing on the objection to FTA during a comment period of not less than 15 days following receipt of the notification, unless agreed upon by all Parties. FTA shall consider the objection, and in reaching its decision, FTA will take all comments from all Parties into account. A copy of all comments will be provided to SHPO before final decision by FTA. Within 15 days following closure of the comment period, FTA will render a decision regarding the objection and respond to the objecting Party. FTA will notify all Parties of its decision in writing, including a copy of the response to the objecting Party. FTA's decision regarding resolution of the objection will be final. FTA will then proceed according to its final decision.

D. AMENDMENTS

1. Any Signatory or Invited Signatory Party to this Agreement may propose in writing that this Agreement be amended, whereupon all Signatory and Invited Signatory Parties will consult for no more than thirty (30) days to consider such amendment. FTA may extend this consultation period. The amendment process will comply with 36 CFR § 800.6(c)(7).

    The amendment will be effective on the date a copy signed by the Signatory and Invited Signatory Parties is filed with the ACHP. This Agreement may be amended only upon the written agreement of the Signatory and Invited Signatory Parties.

2. In the event that another federal agency not initially a Party to or subject to this Agreement receives an application for funding/license/permit for the Undertaking as described in this Agreement, that agency may fulfill its Section 106 responsibilities by stating in writing it concurs with the terms of this Agreement and notifying Signatory Parties and Invited Signatories that it intends to do so. The proposed amendment by another federal agency is subject to Stipulation IX.D. The amended agreement will be evidenced by filing with the ACHP and implementation of the terms of this Agreement.

3. FTA will notify all Parties of requests to amend the Agreement. Per 36 CFR §-800.6(c)(9), FTA will provide all Parties with a copy of any amendment to the Agreement.

E. TERMINATION

If any Signatory Party or Invited Signatory to this Agreement determines that its terms will not or cannot be carried out, that Party shall immediately consult with the other Signatory Parties and Invited Signatories to attempt to develop an amendment per Stipulation IX.D. If within thirty (30) days (or another time period agreed to by all Signatory Parties and Invited Signatories) an amendment cannot be reached, any Signatory Party or Invited Signatory may terminate this Agreement upon written notification to the other Signatory Parties and Invited Signatories. FTA will notify all Parties of requests to terminate this Agreement.

Once this Agreement is terminated, and prior work is continuing on the Undertaking, FTA must either (a) execute a Programmatic Agreement pursuant to 36 CFR § 800.14 or (b) request, take into account, and respond to the comments of the ACHP under 36 CFR § 800.7. FTA shall notify the other Signatory Parties and Invited Signatories as to the course of action it will pursue within 30 days of the termination of the agreement.

F. DURATION OF THE PROGRAMMATIC AGREEMENT

1. The terms of this Agreement will be satisfactorily fulfilled within ten (10) years following the date of execution by the Signatory Parties. If FTA determines that this requirement cannot be met, the Parties will consult to reconsider its terms beginning at least 120 days prior to the date of expiration. Reconsideration may include continuation of the Agreement as originally executed, amendment of the Agreement, or termination. In the event of termination, FTA will comply with Section E of this Stipulation if it determines that the Undertaking will proceed notwithstanding termination of this Agreement.

2. Unless terminated pursuant to Section E of this Stipulation, or unless it is superseded by an amended Agreement, this Agreement will be in effect following execution by the Signatory Parties. Should the Stipulations be fulfilled prior to the expiration of this Agreement, this Agreement will terminate and have no further force or effect on the day that FTA notifies the other Parties in writing of the determination that all Stipulations of this Agreement have been satisfactorily fulfilled.

3. If the Undertaking has not been initiated within five (5) years following execution of this Agreement by the Signatory Parties, this Agreement will automatically terminate and have no further force or effect. In such event, FTA will notify the

other Parties to the Agreement in writing and, if it chooses to continue with the Undertaking, will reinitiate review of the Undertaking in accordance with 36 CFR § 800.

G. EFFECTIVE DATE

This Agreement will take effect on the date that it has been executed by FTA and SHPO.

H. EXECUTION

Execution of this Agreement by FTA and SHPO, its filing with the ACHP in accordance with 36 CFR § 800.6(b)(1)(iv), and subsequent implementation of its terms, shall evidence that FTA has afforded the ACHP an opportunity to comment on the Undertaking and its effects on historic properties, and that FTA has taken into account the effects of the Undertaking on historic properties.

SIGNATORY PARTIES

**Federal Transit Administration**

By: _____  Date: 5/8/2018
    Edward Carranza Jr.
    Acting Regional Administrator, Region IX

**California State Historic Preservation Officer**

By: _____  Date: 9 May 2018
    Julianne Polanco
    State Historic Preservation Officer

INVITED SIGNATORIES

**Santa Clara Valley Transportation Authority**

By: _____  Date: 5-4-18
    Nuria I. Fernandez
    General Manager/CEO

**California Department of Transportation**

By: _____  Date: 5/7/18
    James E. Davis
    Acting Director, Caltrans District 4

# CONCURRING PARTIES

**Muwekma Ohlone Indian Tribe of the San Francisco Bay Area**

By: ___[signature]_____ Date: 7-28-2018
    Rosemary Cambra
    Chairperson

By: ___[signature]_____ Date: 07/24/2018
    Charlene Nijmeh
    Incoming Chairperson

**Ohlone Indian Tribe**

By: ___[signature]_____ Date: 25 May 2018
    Andrew Galvan

**Trina Marine Ruano Family**

By: _____ Date: _____
    Ramona Garibay
    Representative

**Indian Canyon Mutsun Band of Costanoan**

By: ___[signature]_____ Date: July 20, 2018
    Ann Marie Sayers
    Chairperson

**Amah Mutsun Tribal Band of Mission San Juan Bautista**

By: _____ Date: _____
    Irenne Zwierlein
    Chairperson

**Ohlone Individuals Unaffiliated with Other Contemporary Tribes**

By: ___[signature]_____ Date: May 24, 2018
    Jakki Kehl
    Mutsun Ohlone

By: ___[signature]_____ Date: July 17, 2018
    Katherine Erolinda Perez
    Ohlone/Costanoan

By: ___[signature]_____ Date: 7 July 2018
    Linda Yamane
    Rumsen Ohlone

**City of San José**

By: _D.DSyL_ Date: 5/25/18
David Sykes
City Manager

**City of Santa Clara**

By: _Andrew Crabtree_ Date: May 15, 2018
Andrew Crabtree
Community Development Director

**Peninsula Corridor Joint Powers Board (JPB)**

By: _[signature]_ Date: 5/17/20
Jim Hartnett
EXECUTIVE DIRECTOR

**South Bay Historical Railroad Society**

By: _[signature]_ Date: 5/21/2018
Stephen J. Morash
Chairman of the Board

## ATTACHMENTS

Attachment A:   Area of Potential Effects
Attachment B:   List of Architectural Historic Properties within the Area of Potential Effects
Attachment C:   Archaeological Resources Treatment Plan (ARTP)