UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF CALIFORNIA
SAN JOSE DIVISION

KANYON SAYERS-ROODS,

PLAINTIFF,

VS.

MARLENE RITA MACHADO,

DEFENDANT.

CASE NO. CV-20-3092-EJD

SAN JOSE, CALIFORNIA

JUNE 16, 2022

PAGES 1 - 26

TRANSCRIPT OF PROCEEDINGS
BEFORE THE HONORABLE EDWARD J. DAVILA
UNITED STATES DISTRICT JUDGE

A-P-P-E-A-R-A-N-C-E-S

FOR THE PLAINTIFF: BY: KANYON SAYERS-ROODS
1 INDIAN CANYON ROAD
INDIAN CANYON
HOLLISTER, CALIFORNIA 95122

OFFICIAL COURT REPORTER: IRENE L. RODRIGUEZ, CSR, RMR, CRR
CERTIFICATE NUMBER 8074

PROCEEDINGS RECORDED BY MECHANICAL STENOGRAPHY, TRANSCRIPT PRODUCED WITH COMPUTER.

SAN JOSE, CALIFORNIA JUNE 25, 2022

P R O C E E D I N G S

(COURT CONVENED AT 11:03 A.M.)

THE COURT: LET'S TURN TO THE NEXT MATTER, 22-3092, SAYERS-ROODS VERSUS MACHADO. IF THOSE PARTIES COULD COME FORWARD, PLEASE.

GOOD MORNING. MAY I KNOW YOUR NAME.

MS. SAYERS-ROODS: MY NAME IS KANYON SAYERS-ROODS.

THE COURT: ALL RIGHT. YOU'RE A PLAINTIFF IN THIS MATTER?

MS. SAYERS-ROODS: I AM.

THE COURT: AND IS MARLENE RITA MACHADO PRESENT?

I SEE OR HEAR NO RESPONSE. THE RECORD SHOULD REFLECT THAT IT'S 10:59, AND THIS IS A 10:00 O'CLOCK CALENDAR. MS. MACHADO IS NOT PRESENT.

WAS SHE SERVED WITH THIS DOCUMENT?

MS. SAYERS-ROODS: I DO KNOW SHE WAS SERVED WITH A COMPLAINT ON JUNE 9TH, AND THERE WAS ALSO AN EFFORT THAT WAS MADE OVER THE PHONE.

THE COURT: OKAY. THANK YOU.

WELL, I SET THIS CASE, MS. SAYERS-ROODS, BECAUSE I LOOKED AT YOUR LAWSUIT, AND I'M CURIOUS ABOUT WHETHER OR NOT -- AND YOU READ MY ORDER -- I'M CURIOUS WHETHER OR NOT THIS COURT ACTUALLY HAS JURISDICTION, THAT IS, WHETHER THIS COURT HAS --

THIS IS THE APPROPRIATE COURT TO HEAR YOUR CASE. IT'S CALLED ORDER TO SHOW CAUSE. IT'S BASICALLY ASKING THE PARTY TO COME IN AND ANSWER THAT QUESTION, BECAUSE AS I LOOKED AT THE LAW THAT RELATES TO THE LAWSUIT, I'M NOT CERTAIN THAT I CAN HEAR THE CASE, NOTWITHSTANDING THE GROUND THAT YOU STATED. AND THAT'S WHY I WANTED YOU TO APPEAR.

FIRST OF ALL, LET ME ASK YOU, HAVE YOU HAD THE OPPORTUNITY TO SPEAK WITH OUR PRO SE LAWYER? WE HAVE A LAWYER HERE THAT WE, THE COURT, PAYS FOR THIS LAWYER, AND HE HAS AN OFFICE HERE ON THE SECOND FLOOR. HIS JOB IS TO HELP PRO SE LITIGANTS, PEOPLE WHO ARE APPEARING IN COURT WITHOUT LAWYERS, AND HIS JOB IS TO HELP THEM WITH THEIR LAWSUIT, HELP GIVE THEM GUIDANCE. HE'S NOT REPRESENTING ANYONE, BUT HE PROVIDES GUIDANCE FOR THE LAWSUIT.

HAVE YOU HAD AN OPPORTUNITY TO SPEAK WITH HIM?

MS. SAYERS-ROODS: TO SPEAK WITH HIM? NO. TO REVIEW THE HANDBOOK? YES.

THE COURT: OKAY. OKAY. I THINK I PUT IN THE ORDER TO SHOW CAUSE AN INVITATION, A SUGGESTION THAT YOU MIGHT WANT TO DO THAT TO GET SOME ASSISTANCE.

BUT OKAY. THANK YOU.

SO WHAT WOULD YOU LIKE ME TO KNOW THIS MORNING?

MS. SAYERS-ROODS: WELL, I HAVE CURRENTLY DOCKET ITEM NUMBER 163. I HAVE THE U.S.P.S. INSPECTOR GENERAL DECLARING THAT THERE IS SPECIAL JURISDICTION REGARDING OUR

RURAL MAILBOX AND POSTAL BOX.

THE COURT: SO YOU HAVE -- IT SOUNDS LIKE YOU HAVE REFERRED THE CONDUCT THAT YOU ALLEGE MS. MACHADO HAS ENGAGED IN TO THE UNITED STATES POSTAL INSPECTION.

MS. SAYERS-ROODS: YES.

THE COURT: OKAY. WHEN DID YOU DO THAT?

MS. SAYERS-ROODS: WHICH ONE?

THE COURT: THE POSTAL.

MS. SAYERS-ROODS: OH. I RECEIVED THIS LETTER, I RECEIVED -- I SUBMITTED IT ON THE 6TH. HOWEVER, WHEN I PURSUED IT, JUNE 3RD, TO CONFIRM THAT WE HAVE PROOF THAT IT IS OUR POSTAL BOX, SO YOU HAVE THE RIGHT PROOF.

THE COURT: MY QUESTION WAS HAVE YOU SENT THIS -- HAVE YOU ISSUED A COMPLAINT?

MS. SAYERS-ROODS: YES.

THE COURT: THAT THERE'S BEEN INTERFERENCE?

MS. SAYERS-ROODS: TO THE POSTAL?

THE COURT: YES.

MS. SAYERS-ROODS: I BELIEVE SO. YES, CRIMINAL INVESTIGATIONS CENTER, YES.

THE COURT: RIGHT. DO YOU HAVE THAT LETTER? DO YOU WANT ME TO LOOK AT WHAT YOU SENT?

MS. SAYERS-ROODS: YES, SURE.

THE COURT: YOU CAN HAND IT TO OUR CLERK.

MS. SAYERS-ROODS: IT'S THE AA EXHIBIT. IT'S NOT ON

TOP. I APOLOGIZE.

THE COURT: OH, THIS IS THE DOCUMENT.

MS. SAYERS-ROODS: YEAH, APOLOGIES.

THE COURT: NO. I SEE IT. YEAH.

I'M CURIOUS WHETHER OR NOT, NOT WHETHER YOU FILED IT IN THIS COURT, BUT WHETHER YOU FILED A REQUEST OR A COMPLAINT DIRECTLY TO THE POSTAL SERVICE REGARDING WHAT MS. MACHADO HAS BEEN DOING?

MS. SAYERS-ROODS: CURRENTLY I'M SEEKING YOUR ASSISTANCE FOR A TEMPORARY RESTRAINING ORDER TO --

THE COURT: RIGHT. LET ME GIVE YOU THESE BACK.

THE CLERK: I'M SORRY.

THE COURT: RIGHT. THAT'S THE QUESTION OF WHETHER OR NOT I HAVE JURISDICTION TO EVEN HEAR THAT, TO HEAR THE TEMPORARY RESTRAINING ORDER.

BUT MY QUESTION IS, BECAUSE WHEN I LOOK AT THE LAW, IT SEEMS TO ME, MS. SAYERS ROODS, THAT TO FOLLOW UP WITH THE CONDUCT THAT YOU'VE ALLEGED MS. MACHADO HAS DONE, THIS CONDUCT I'M REFERRING TO IS HER INTERFERING WITH YOU RECEIVING MAIL AT THE POST OFFICE BOX, AT YOUR MAILBOX, PARDON ME, THAT YOU CLEARLY IDENTIFY IN THESE DOCUMENTS, THAT COMPLAINT IS SOMETHING THAT THE COURT DOESN'T HAVE ORIGINAL JURISDICTION OVER, BUT THAT'S SOMETHING THAT IT SEEMS THAT THE APPROPRIATE COURSE OF CONDUCT FOR YOU, WHAT YOU SHOULD DO IS TO -- AND I'M NOT GIVING YOU LEGAL ADVICE, BUT IT APPEARS THAT THAT TYPE OF

COMPLAINT SHOULD GO DIRECTLY TO THE POSTMASTER GENERAL, THE POST OFFICE, AND THEY HAVE AN INVESTIGATION -- THEY HAVE THEIR OWN POLICE. THEY HAVE THEIR OWN INVESTIGATION DIVISION THAT THEN WILL INVESTIGATE THAT TYPE OF ACTIVITY, AND THAT'S WHY I WAS ASKING IF YOU HAD CONTACTED THE POSTAL SERVICE FOR THAT.

MS. SAYERS-ROODS: I DIDN'T REALIZE THAT.

I DO ALSO WANT TO POINT OUT THAT MARLENE MACHADO IS CURRENTLY IN INDIAN COUNTRY, AND SHE'S CONSISTENTLY INTERFERING WITH INGOING AND OUTGOING.

THE COURT: YES.

MS. SAYERS-ROODS: AND I HADN'T REALIZED THAT THE POSTAL CRIMINAL INVESTIGATORS WERE ALLOWED TO HAVE JURISDICTION TO REMOVE HER HENCE THE REASON --

THE COURT: NO, I DIDN'T SAY THAT. I DIDN'T SAY THAT. NO.

BUT THEY HAVE JURISDICTION OVER THE MAILBOX.

MS. SAYERS-ROODS: CORRECT, I GET THAT.

THE COURT: AND SO PART OF YOUR COMPLAINT, I BELIEVE, IS THAT MS. MACHADO IS EITHER STEALING OR SOMEHOW INTERFERING WITH YOUR RECEIPT OF UNITED STATES MAIL.

MS. SAYERS-ROODS: YES.

THE COURT: AND THAT IS WHAT THE POSTAL SERVICE WOULD DO, THEY WOULD INITIATE AN INVESTIGATION ABOUT THAT COMPLAINT, AND THEY HAVE A POLICE FORCE, A LAW ENFORCEMENT INVESTIGATION DIVISION THAT THEY, IF YOU MAKE A COMPLAINT TO

11:06AM THEM, THEY'RE OBLIGATED TO INVESTIGATE.

11:06AM THEY WON'T DO AN INVESTIGATION ABOUT TRESPASSES THAT 11:06AM MS. MACHADO IS ON INDIAN LAND, BUT THEY WILL INVESTIGATE YOUR 11:06AM ALLEGATIONS THAT SHE IS DISRUPTING YOUR POSTAL SERVICE.

11:06AM DOES THAT MAKE SENSE?

11:06AM MS. SAYERS-ROODS: THAT DOES.

11:06AM THE COURT: NOW, THE ISSUE -- AND WHAT I UNDERSTAND 11:06AM FROM YOUR PAPERS ARE THAT THERE IS A NON, NON-TRIBAL PERSON ON 11:06AM IDENTIFIED TRIBAL LAND AND SHE'S INTERFERING. SHE HAS NO 11:06AM BUSINESS ON THE LAND FROM YOUR PERSPECTIVE. AND YOU WOULD LIKE 11:06AM HER EITHER REMOVED OR SOMEHOW TO RESTRAIN THE CONDUCT THAT 11:06AM SHE'S BEEN ENGAGED IN.

11:06AM I READ YOUR DECLARATIONS ABOUT THE TREATMENT OF YOUR 11:06AM MOTHER, I BELIEVE IT IS.

11:06AM MS. SAYERS-ROODS: YES.

11:06AM THE COURT: AS WELL AS TRIBAL ARTIFACTS.

11:06AM MS. SAYERS-ROODS: YES.

11:06AM THE COURT: AND HER INTERFERENCE WITH TRIBAL 11:07AM GOVERNANCE.

11:07AM MS. SAYERS-ROODS: YES.

11:07AM THE COURT: LET ME ASK A QUESTION, DOES YOUR TRIBE 11:07AM HAVE, DO YOU HAVE, DOES YOUR NATION HAVE A TRIBAL COUNCIL?

11:07AM MS. SAYERS-ROODS: CURRENTLY WE HAVE A SMALL COUNCIL 11:07AM OF ELDERS. THE COSTANOAN-CHUALAR INDIAN TRIBAL COMMUNITY OF 11:07AM INDIAN CANYON IS LOCATED ON CANYON ROAD DOES HAVE A SMALL ELDER

11:07AM COUNCIL.

11:07AM THE COURT: RIGHT. AND HAS THE COUNCIL DEALT WITH THIS ISSUE OF MS. MACHADO AND HAVE THEY TAKEN ACTION?

11:07AM MS. SAYERS-ROODS: THE ACTION HAS BEEN DECLARING MYSELF AS TRIBAL CHAIR AND TO PURSUE LEGAL ACTION THROUGH FEDERAL COURT TO REMOVE HER FROM FEDERAL LAND AS TO WHY I'M ATTEMPTING TO PRESENT THIS CASE TO YOU.

11:07AM THE COURT: I SEE. OKAY. I UNDERSTAND.

11:07AM HAS THAT -- HAS THEIR DECISION THEN MEMORIALIZED, LET ME SAY, HAVE THEY ISSUED A WRITTEN DECISION, SOMETHING THAT IS ON PAPER THAT IDENTIFIES THE COUNCIL?

11:08AM MS. SAYERS-ROODS: YES.

11:08AM THE COURT: OKAY. DO YOU HAVE THAT?

11:08AM MS. SAYERS-ROODS: TODAY I DON'T HAVE A PRINTOUT. I DO HAVE THAT ON RECORD.

11:08AM THE COURT: OKAY. I ASK THIS QUESTION BECAUSE IF THE COUNCIL HAS MADE THAT DECISION, THEY COULD MAKE A DECISION TO HAVE YOU PURSUE RELIEF WITH THE SHERIFF, SAN BENITO COUNTY SHERIFF, AND IF YOU HAVE A DOCUMENT THAT THE TRIBAL COUNCIL, HAS MET, HAS HEARD THIS ISSUE, AND THE TRIBAL COUNCIL REFERS THIS MATTER TO THE SAN BENITO -- I THINK IT'S IN SAN BENITO COUNTY. IT'S NOT MONTEREY COUNTY.

11:08AM MS. SAYERS-ROODS: CORRECT.

11:08AM THE COURT: RIGHT. REFERRED TO THE SAN BENITO COUNTY SHERIFF FOR HER OR HIS ACTION, THAT MIGHT BE ANOTHER

ALTERNATIVE RELIEF, AND THEN, BECAUSE THE SHERIFF DOES HAVE, THEY DO HAVE AUTHORITY AND THE OPPORTUNITY TO GO ON INDIAN LAND AND ENFORCE, ENFORCE LAWS, CALIFORNIA LAW, IF THIS PERSON IS ENGAGED IN A VIOLATION OF CALIFORNIA LAW, THE PENAL CODE, AND IT MIGHT BE PENAL CODE 602, WHICH IS A TRESPASS, IT MIGHT BE PENAL CODE 415, WHICH IS DISTURBING THE PEACE, IT MIGHT BE PENAL CODE 240, 242, WHICH ARE ASSAULT AND BATTERY. AGAIN, PENAL CODE 415 IS DISTURBING THE PEACE. IT COULD BE -- TRESPASS IS 602. THAT'S ANOTHER PENAL CODE. THESE ARE ALL MISDEMEANORS.

IT COULD BE THAT SHE'S ENGAGED IN THE THEFT OF PROPERTY OR DISTURBING PROPERTY, THAT'S UNDER PENAL CODE SECTION 484. I'M JUST GIVING YOU THIS -- I'M NOT GIVING YOU LEGAL ADVICE, PLEASE.

MS. SAYERS-ROODS: I UNDERSTAND THAT.

THE COURT: BUT I'M JUST TELLING YOU THAT AT LEAST WHAT SOME OF THESE SECTIONS THAT YOU MIGHT WANT TO LOOK AT.

AND IT MAY BE THAT IF THE COUNCIL MAKES A REFERRAL, THEN THE SHERIFF MIGHT TAKE SOME ACTION. MY SENSE IS THAT THE SHERIFF HAS NOT TAKEN ANY ACTION BECAUSE THEY FEEL THEY DON'T HAVE AUTHORITY TO GO ON INDIAN LAND.

THERE'S A GENTLEMAN OUT HERE WHO KEEPS NODDING HIS HEAD OR SHAKING HIS HEAD. IS HE RELATED TO THIS CASE?

MS. SAYERS-ROODS: HE IS STAFF TO THE TRIBE. HE'S A WITNESS AS WELL.

THE COURT: SURE. SHOULD I SPEAK WITH HIM?

MS. SAYERS-ROODS: IF YOU WILL PERMIT, YES, PLEASE.

THE COURT: SURE. SIR, DO YOU WANT TO COME FORWARD? THANK YOU FOR BEING HERE.

MS. SAYERS-ROODS: THIS IS CARY LEE PETERSON.

THE COURT: OKAY. SIR, IF YOU COULD JUST SPEAK INTO THE MICROPHONE. YOU CAN COME UP HERE. NO, NO, YOU CAN COME UP HERE.

MR. PETERSON: THANK YOU, YOUR HONOR.

THE COURT: IF YOU COULD STATE YOUR NAME AND SPELL IT, PLEASE.

MR. PETERSON: MY NAME IS CARY PETERSON, C-A-R-Y, P-E-T-E-R-S-O-N.

THE COURT: THANK YOU. MAY I JUST KNOW YOUR CONNECTION TO THIS CASE?

MR. PETERSON: I'M THE CHIEF FOR LEGAL AFFAIRS AND CHIEF ADVISOR TO TRIBAL COUNCIL FOR THE COSTANOAN-CHUALAR INDIAN TRIBAL COMMUNITY OF INDIAN CANYON.

THE COURT: THANK YOU. THANK YOU FOR BEING HERE, SIR.

ARE YOU AN ATTORNEY?

MR. PETERSON: NO, YOUR HONOR, I'M NOT AN ATTORNEY IN THE STATE OF CALIFORNIA. I DO HAVE A LAW DEGREE. I'M A REGISTERED LAW REGISTRANT FOR U.S. CONGRESS. I HAD PRACTICED LAW IN MICRONESIA, I PRACTICED LAW IN D.C., AND I PRACTICED LAW

IN THE TRIBAL COURT, BUT I'M NOT AN ATTORNEY IN THE STATE OF CALIFORNIA. I JUST WANT TO MAKE THAT CLEAR FOR THE RECORD.

THE COURT: NO. THANK YOU.

MR. PETERSON: CURRENTLY I'M A CONTINUED GRADUATE STUDENT AT HARVARD UNIVERSITY. I'M STUDYING L1 AND FINISH AT U.S.C. GOLD, AND I HAVE GOT A DOCTORATE DEGREE IN LAW IN INTERNATIONAL AFFAIRS AND INTERNATIONAL DIPLOMACIES FROM UNION UNIVERSITY AUGP.

THE COURT: OKAY. THANK YOU VERY MUCH.

WELL, SIR, IT APPEARS THAT YOU HAVE HAD SOME INVOLVEMENT IN THIS CASE, AND YOU'VE SEEN THE ORDER TO SHOW CAUSE THAT I ISSUED IN REGARDS TO JURISDICTION IN THIS MATTER.

HAVE YOU SEEN THAT?

MR. PETERSON: YOUR HONOR, YES, I'M FAMILIAR WITH THE RECORD ENTRY FROM DOCKET 1 THROUGH 25.

THE COURT: GREAT. THANK YOU.

SO WHAT I WAS SUGGESTING TO MS. SAYERS-ROODS IS TO SPEAK WITH OUR PRO SE LAWYER WHO IS HERE IN THE COURTHOUSE TO GIVE ADVICE ON THE PLEADINGS BECAUSE I HAVE SOME SERIOUS CONCERNS ABOUT WHETHER OR NOT THIS COURT HAS JURISDICTION JUST BASED ON THE PLEADINGS THAT ARE IN FRONT OF ME NOW. THAT WAS MY CONCERN.

MR. PETERSON: YOUR HONOR, WOULD IT BE POSSIBLE TO GET A REHEARING ON DOCKET 16-3 DUE TO THE FACT THAT IT TACITLY STATES IN THE OPENING OF THAT PARTICULAR STATEMENT FROM THE

U.S.P.S., AND I DID PERSONALLY SPEAK WITH THE U.S.P.S. INSPECTOR GENERAL FOR THE REGIONAL DIVISION OF SAN FRANCISCO, AND I ASSISTED MS. SAYERS-ROODS TO SUBMIT THE COMPLAINT, AND 16-3 IS THE RESPONSE FROM THE INSPECTOR GENERAL WITH RESPECT TO THE COMPLAINT THAT DECLARES FEDERAL JURISDICTION IN THE FIRST SENTENCE.

THE COURT: ALL RIGHT.

MR. PETERSON: WITH RESPECT TO THE MAILBOX ONLY, YOUR HONOR, WHICH IS CAUSE CLAIM TWO.

THE COURT: RIGHT. SO MY QUESTION IS WHETHER OR NOT THIS COURT HAS JURISDICTION OVER THE OTHER MATTERS THAT SHE'S ASKING THE COURT TO TAKE ACTION ON, THAT IS, A RESTRAINING ORDER AS TO MS. MACHADO, AND THOSE ARE TWO SEPARATE THINGS.

NOW, MY SENSE IS THAT I DON'T KNOW IF THE SHERIFF HAS BEEN CALLED TO INTERVENE AND TO REMOVE MS. MACHADO.

MR. PETERSON: YES, YOUR HONOR. I'VE BEEN IN CORRESPONDENCE FOR THE LAST TWO MONTHS WITH THE BUREAU OF INDIAN AFFAIRS, THE CALIFORNIA ATTORNEY GENERAL INDIAN AFFAIRS OFFICE, AND WITH THE SAN BENITO COUNTY DISTRICT ATTORNEY AND SHERIFF.

THE COURT: AND HAS THE SHERIFF BEEN OUT TO ASSIST IN THE ISSUE OF MS. MACHADO?

MR. PETERSON: THE SHERIFF AS OF THE 9TH OF JUNE, THEY WERE STANDING BY AS AN ESCORT OR A CIVIL STANDBY TO THE EFFECT THAT THE SERVICE OF PROCESS OF MS. MACHADO.

11:14AM WE HIRED A PROCESS SERVER. WE FILED OR MS. SAYERS-ROODS FILED ON BEHALF OF THE TRIBE BEING THE TRIBAL CHAIR COUNCIL HAD FILED A USM285, DOCKET ENTRY NUMBER 3.

11:15AM THE COURT: SO MY QUESTION IS A LITTLE SIMPLER.

11:15AM IF THERE IS A DISTURBANCE ON INDIAN LAND, THE PARTY ON INDIAN LAND, A RESIDENT, CAN CALL THE SHERIFF FOR POLICE ASSISTANCE. YOU DON'T HAVE TO GO THROUGH THE IA AND THOSE THINGS.

11:15AM IF THERE IS AN URGENT MATTER, MY UNDERSTANDING IS THAT THE SHERIFF IS OBLIGATED TO RESPOND TO ANY CONDUCT, IF THERE'S AN ASSAULT AND BATTERY ON INDIAN LAND.

11:15AM I DON'T THINK THE TRIBE HAS A TRIBAL POLICE FORCE, DO THEY?

11:15AM MR. PETERSON: NO, YOUR HONOR. AT THE MOMENT, THE TRIBAL COMMUNITY IS SMALL AND IT CONSISTS OF THREE TRIBAL MEMBERS, YOU KNOW, TWO TRIBAL MEMBERS THAT HAVE ROLES WITH THE BUREAU OF INDIAN AFFAIRS, AND MS. SAYERS-ROODS TO MY LEFT WAS RECENTLY APPOINTED AND ELECTED AS THE TRIBAL COCHAIR BACK IN FEBRUARY OF THIS YEAR.

11:16AM THE COURT: NO, I UNDERSTAND.

11:16AM MR. PETERSON: MS. ANN MARIE SAYERS WAS NOT IN A PROFESSIONAL CAPACITY.

11:16AM THE COURT: SIR, I UNDERSTAND THE HISTORY OF THAT AND THE ROLES. THAT'S BEEN IDENTIFIED IN THE PLEADINGS, BUT MY QUESTION RELATES TO IF THERE IS SOME TYPE OF INCIDENT ON INDIAN

11:16AM LAND, THE SHERIFF, THE SAN BENITO COUNTY SHERIFF IS A LAW ENFORCEMENT OFFICER, AGENCY THAT WOULD RESPOND TO A CALL, AND I'M CURIOUS WHY THE SHERIFF'S OFFICE, FIRST OF ALL, WHETHER THEY'VE BEEN CONTACTED, AND, SECONDARILY, WHY THEY'RE NOT RESPONDING TO A CALL, IF THERE HAS BEEN A CALL, ABOUT AN ASSAULT, ABOUT TRESPASS, THOSE TYPES OF THINGS.

MR. PETERSON: YOUR HONOR, IN THE PRESENT, THE DISTRICT ATTORNEY AND MYSELF HAVE HAD CORRESPONDENCE TO THE EFFECT THAT THEY HAVE INTEREST TO SEEK CRIMINAL ACTION WITH RESPECT TO A BURGLARY AND BATTERY WHEREAS THE DISTRICT ATTORNEY FOR SAN BENITO COUNTY HAS TOLD ME THAT HE HAS NO JURISDICTION TO CREATE A PROSECUTION FOR MS. MACHADO WITH RESPECT TO THE RURAL MAILBOX THAT BELONGS TO THE TRIBAL COMMUNITY AND THE P.O. BOX THAT BELONGS TO THE TRIBAL COMMUNITY. THAT WOULD BE A FEDERAL INTEREST.

THE COURT: SURE. I UNDERSTAND THAT.

MY QUESTION IS NOT RELATED TO THE MAILBOX. IT'S RELATED TO THE CONDUCT OF MS. MACHADO AS AGAINST THE MOTHER, AS AGAINST TRESPASS, AS AGAINST ANY OTHER STATE TYPE OF CRIMINAL ACTIVITY, AND I'M CURIOUS WHETHER THE SHERIFF HAS BEEN CONTACTED TO COME AND TAKE CARE OF THOSE SITUATIONS.

MR. PETERSON: YOUR HONOR, IN THE PRESENT, THE SHERIFF, AT THE BEHEST OF THE DISTRICT ATTORNEY, HAS ADMINISTRATIVELY SET ASIDE THE CRIMINAL ACTION TO AWAIT THE DECISION WITH THE FEDERAL COURT, AND THEY'RE OF THE

11:18AM UNDERSTANDING THAT SOME OF THE CLAIMS WOULD LEAVE THIS COURT TO THE STATE COURT OR TO THE DISTRICT ATTORNEY'S DESK AND THE FEDERAL INTERESTS WOULD REMAIN UNDER THIS COURT OR FEDERAL AGENCY.

11:18AM THE COURT: OKAY.

11:18AM MR. PETERSON: AND THE BUREAU OF INDIAN AFFAIRS AND THE FEDERAL GOVERNMENT HAS EXPRESSED TO THE DISTRICT ATTORNEY, FROM MY UNDERSTANDING, THAT THEY WOULD LIKE TO SEEK A WANT OF PROSECUTION AGAINST MS. MACHADO.

11:18AM THE COURT: THEY WOULD LIKE TO SEEK A WHAT? WHAT IS A WANT OF PROSECUTION?

11:18AM MR. PETERSON: THEY'RE LOOKING TO PROCEED WITH CHARGES AGAINST HER.

11:18AM THE COURT: THE UNITED STATES ATTORNEY'S OFFICE IS?

11:18AM MR. PETERSON: I'M NOT SURE OF THE AUSA. I HAVEN'T SPOKEN WITH THE AUSA, YOUR HONOR. I DON'T WANT TO MISSTATE ANYTHING FOR THE RECORD.

11:18AM THE COURT: SO THE SOURCE OF THIS INFORMATION IS?

11:18AM MR. PETERSON: THE SAN BENITO COUNTY DISTRICT ATTORNEY.

11:18AM THE COURT: I SEE.

11:18AM MR. PETERSON: THEY'VE BEEN CONTACTED BY THE FEDERAL GOVERNMENT. CURRENTLY THE CORRESPONDENCE IS BETWEEN SPECIAL AGENT LORENZ FOR THE BUREAU OF INDIAN AFFAIRS. I GUESS HE'S IN THE CRIMINAL DIVISION. I DON'T KNOW IF HE'S GOT A NEXUS WITH

THE DOJ, I PRESUME SO, AND THE D.A. AGAIN, THEY ARE ONLY INTERESTED IN CRIMINALLY PROSECUTING THE BATTERY AND THE BURGLARY.

THE COURT: CORRECT.

THEY, THE DISTRICT ATTORNEY?

MR. PETERSON: YES, YOUR HONOR.

THE COURT: RIGHT. SO THAT'S THE STATE CAUSES OF ACTION THAT I WAS TALKING ABOUT, CALIFORNIA PENAL CODE VIOLATIONS.

MR. PETERSON: YES, YOUR HONOR, CLAIMS 1 AND 3.

THE COURT: SO AS TO THAT, I'M NOT CERTAIN AT THIS POINT THAT THIS, AS I SAID, THAT THIS COURT HAS JURISDICTION.

THE POST OFFICE BOX ISSUE, IT SOUNDS LIKE THAT -- YOU'VE DONE THAT. YOU'VE CONTACTED THE POSTAL INSPECTOR'S OFFICE AND THEY'RE ENGAGED IN AN INVESTIGATION ABOUT MS. MACHADO'S ALLEGED CONDUCT.

MR. PETERSON: YOUR HONOR, MAY I ADD TO THE RECORD JUST AS A WITNESS WITH RESPECT TO THE COSTANOAN-CHUALAR INDIAN TRIBAL COMMUNITY IN INDIAN CANYON, I HAVE OBSERVED THAT THIS PARTICULAR TORT IS AD INFINITUM. IT'S ONGOING.

AND CURRENTLY THE INSPECTOR GENERAL, THEY HAVE OPENED UP AN SPECIAL INVESTIGATION, AND THEY DECLARED THAT IN DOCKET NUMBER 63. HOWEVER, I -- CLEARLY I'VE OBSERVED THIS FROM MY LEGAL EXPERTISE AS A NON-ATTORNEY FOR THE STATE OF CALIFORNIA BUT AS AN ATTORNEY FOR THE, YOU KNOW, LEGAL COUNSEL FOR THE

TRIBAL COMMUNITY, AND ALSO FOR SOMEBODY WITH A LAW DEGREE, I WOULD SAY THAT THE TORT CURRENTLY WITH RESPECT TO THE MAILBOX, THERE'S MAIL THAT HAS BEEN COMING FROM GOVERNMENT AGENCIES.

IF YOU LOOK AT THE RECORD, I HAVE OBSERVED THE RECORD THAT MS. KANYON SAYERS-ROODS HAS PUT IN IN PRO SE, THERE ARE DOCUMENTS FROM THE U.S. ARMY SHOWING ACTIVE CONTACTS, THERE WAS DOCUMENTS FROM THE SANTA CLARA MUNICIPALITY LOCAL GOVERNMENT, AND THERE ARE OTHER MAIL ITEMS THAT COME IN AND OUT OF THIS FEDERAL PROPERTY THAT THE DEFENDANT CURRENTLY HAS ACCESS TO ILLEGALLY, AND IF THERE'S NOTHING DONE BY THIS COURT, THE TORT WOULD CONTINUE, AND IT WOULD CAUSE MORE HARM AND DAMAGE TO THE TRIBAL COMMUNITY.

THE COURT: I UNDERSTAND.

MR. PETERSON: AND THE PROPOSED ORDER, YOUR HONOR, IT SAYS TO THE EFFECT OF THE LEAVE OF CAUSES ONE AND THREE TO THE STATE COURT AND ONLY SEEKING TRO FOR CAUSE CLAIM TWO. THAT'S WHAT I OBSERVED IN THE RECORD, YOUR HONOR, AT DOCKET ENTRY NUMBER 17.

THE COURT: RIGHT. AND THAT'S THE PURPOSE THAT WE'RE HERE TODAY, SIR, IS TO DETERMINE WHETHER OR NOT THIS COURT HAS JURISDICTION TO DO THAT OR WHETHER THAT IS A SEPARATE STAND ALONE INVESTIGATION FOR THE UNITED STATES POSTAL SERVICE TO ENGAGE IN, AND THAT WAS PART OF OUR CONVERSATION TODAY. I'M GLAD YOU PARSED OUT THOSE OTHER COUNTS, THE PENAL CODE VIOLATIONS, POTENTIAL PENAL CODE VIOLATIONS THAT I MENTIONED.

I DON'T KNOW IF THOSE ARE HAPPENING OR ONGOING, BUT I CITE THOSE JUST BASED ON THE ALLEGATIONS IN THE DOCUMENTS THAT ARE IN FRONT OF ME.

THIS COURT DOES NOT HAVE JURISDICTION FOR THE STATE, THOSE STATE VIOLATIONS. I'M GLAD TO HEAR THAT YOU HAVE PURSUED THOSE WITH THE SAN BENITO COUNTY DISTRICT ATTORNEY. WHAT WAS HIS NAME? HE WAS RECENTLY ELECTED, I BELIEVE.

MR. PETERSON: I'M NOT SURE. MY CONTACT DIRECTLY IS THE CRIMINAL DIVISION IS MR. VICTOR CASADA.

THE COURT: CASADA?

MR. PETERSON: UH-HUH. I THINK HE'S THE ASSOCIATE TO THE PRIMARY D.A. I SPOKE TO THE PRIMARY D.A. I THINK HIS NAME IS -- OH, MAN, WE WERE ON A CONFERENCE CALL.

THE COURT: THAT'S FINE.

MR. PETERSON: I'M BAD WITH THE NAMES.

THE COURT: THAT IS FINE.

MR. PETERSON: YOUR HONOR, MAY I ASK ARE YOU IN A CAPACITY TO MAKE A RECOMMENDATION TO EXPEDITE THE ADMINISTRATIVE PROCEDURE WITH THE U.S. POSTAL INSPECTOR DUE TO THE FACT THAT FROM WHAT I'VE OBSERVED IN DOCKET ENTRY NUMBER 17 THAT WAS FILED BY THE PRO SE PLAINTIFF, IT WAS SEEKING JUST THE TEMPORARY RELIEF, SO IF A RECOMMENDATION HAD BEEN AN ADDENDUM WITH THE PROPOSED ORDER FOR THE RELIEF TO THE EFFECT OF STAY AWAY FROM THE MAILBOX AND THE P.O. BOX, THERE'S A POSSIBILITY -- I MEAN, THE RELIEF WITH RESPECT TO THE LEAVE TO

THE STATE, WE PROBABLY -- THE TRIBE IS NOT GOING TO HAVE ANY INTEREST TO PROSECUTE OR CIVILLY PROSECUTE MS. MACHADO. SHE DOESN'T HAVE ANY ASSETS. SHE DOESN'T HAVE ANY MONEY. SHE'S A TRESPASS --

THE COURT: I'M TALKING ABOUT CRIMINAL ACTION TAKEN FROM THE D.A.

SIR, WE CAN ONLY TALK ONE AT A TIME.

I WAS TALKING ABOUT CRIMINAL ACTION. YOU KNOW, MS. ROODS WOULD LIKE TO HAVE HER REMOVED, AND IF SHE'S A TRESPASSER, THE SHERIFF IS THE ONE WHO WOULD TAKE ACTION ON THAT, NOT ME, THE SHERIFF WOULD ENGAGE IN THAT TYPE OF CONDUCT.

AS TO YOUR QUESTION ABOUT WHETHER OR NOT I CAN RECOMMEND SOMETHING TO THE POSTAL INVESTIGATION TO ENHANCE THEIR INVESTIGATION, I DON'T BELIEVE I HAVE JURISDICTION TO DO THAT, SIR. I DON'T BELIEVE I DO. I THINK THAT'S A STAND-ALONE INVESTIGATION, AND COURTS DO NOT ENGAGE IN TELLING INVESTIGATORY -- I CAN'T TELL THE UNITED STATES ATTORNEY TO RAMP UP AN INVESTIGATION ON A CASE, AND IT'S VERY SIMILAR IN THIS REGARD. SO I DON'T THINK I'LL BE ABLE TO DO THAT.

I APPRECIATE YOU ASKING. IT SUGGESTS TO ME THE URGENCY OF THE SITUATION FROM YOUR PERSPECTIVE, AND I APPRECIATE THAT.

I GUESS WHAT I'M SAYING, SIR, IS THAT IT JUST SEEMS TO ME THAT OTHER THAN THE INTERFERENCE WITH THE MAIL, THE UNITED STATES MAIL, THE QUICKEST SOURCE OF RELIEF WOULD BE TO CONTACT THE STATE AGENCIES, AS YOU'VE DONE THROUGH THE

DISTRICT ATTORNEY'S OFFICE AND/OR THE SHERIFF'S OFFICE TO REMOVE A TRESPASSER OR TO PREVENT A THEFT OF OTHER DOCUMENTS.

WHAT I WOULD ENCOURAGE YOU TO DO, SIR, IF YOU COULD, IS YOU HAVE THE HANDBOOK FOR OUR PRO SE OFFICE, AND I WOULD ENCOURAGE YOU TO MAKE AN APPOINTMENT WITH OUR PRO SE ATTORNEY AND SPEAK WITH HIM AND RECEIVE SOME GUIDANCE AS TO NEXT STEPS FOR THE LITIGATION.

MR. PETERSON: YOUR HONOR, THE TRIBE HAS MADE COMMUNICATION WITH MULTIPLE COURT ATTORNEYS LICENSED IN THE STATE OF CALIFORNIA.

DUE TO THE DATE REQUIRING MS. SAYERS-ROODS TO BE IN COURT ON THIS PARTICULAR DATE, THERE WERE PAINSTAKING EFFORTS TO -- WE ACTUALLY RETAINED, THE TRIBE RETAINED SOMEBODY ON BEHALF OF MS. SAYERS-ROODS. HE WENT M.I.A. THIS MORNING WE RECEIVED NOTICE THAT THE PARTICULAR ATTORNEY WAS TIED UP IN A CASE. THE SECOND ATTORNEY THAT WAS NOT RETAINED BUT SAID HE WOULD ENTER A NOTICE OF APPEARANCE FOR THIS HEARING ONLY, HE GOT COVID.

THE COURT: OKAY. SO THE LAWYER, OUR LAWYER, THE COURT'S LAWYER HAS THE OPPORTUNITY TO FIND COUNSEL WHO WILL VOLUNTEER PRO SE, NOT ANY MONEY AT ALL, YOU DON'T HAVE TO PAY THEM, THEY'RE BIG LAW FIRMS WHO HAVE LAW FIRMS WHO WILL DO PRO BONO WORK, AND THEY WILL -- HE REFERS THE CASE TO THE LAW FIRM. THE LAW FIRMS LOOK AT THE CASE AND THEY MAKE A DECISION WHETHER THEY WANT TO MAKE A GENERAL APPEARANCE AND MARSHAL THE FULL RESOURCES OF THEIR LAW FIRMS TO ASSIST THE PARTIES IN

CASES WHERE THERE'S NO, NO NEED TO PAY FOR THE LAWYER'S SERVICE. THAT'S ONE OF THE BENEFITS OF OUR LAWYER. WE ACTIVELY, THE COURT, THROUGH THE LAWYER, ACTIVELY RECRUITS LAW FIRMS WHO AGREE TO RECEIVE CASES AND APPEAR AND LITIGATE THOSE CASES ON A PRO BONO BASIS, NO FEES FOR ATTORNEY'S FEES NOR COSTS, AND THIS -- MY SENSE IS THAT THIS IS THE TYPE OF CASE THAT WOULD PROBABLY BE WELCOMED BY MANY LAW FIRMS TO TAKE ON TO ASSIST THE TRIBE.

THAT WAS ONE OF THE REASONS THAT I REALLY WANTED YOU TO SPEAK WITH OUR LAWYER SO HE -- AS I SAID, HE CANNOT REPRESENT ANYONE. HE'S A LICENSED LAWYER. BUT HIS JOB IS NOT TO REPRESENT A PARTY. HIS JOB IS TO ASSIST PARTIES IN THE FILLING OUT OF THEIR PAPERS, THE FORMS, THOSE TYPES OF THINGS, GIVE THEM ADVICE ON HOW TO PROSECUTE THEIR CASE, BUT HE ALSO, HE ALSO HAS RESOURCES OF LAW FIRMS AVAILABLE WHO WILL -- WHO HAVE AGREED TO HAVE LAWYERS FROM THEIR FIRMS STAND IN AND REPRESENT AN INDIVIDUAL IN THE APPROPRIATE CASE, AND I'VE HAD MANY LAWYERS COME IN AND APPEAR, BIG LAW FIRMS, COME IN AND APPEAR AND REPRESENT PARTIES AT NO COST TO THAT PARTY. ITS THEIR PRO BONO SERVICE.

THAT'S ONE REASON WHY I REALLY WANTED YOU TO TALK TO THE LAWYER.

YES, MA'AM.

MS. SAYERS-ROODS: THEY CONTRACTED COVID SO I DID NOT HAVE A CHANCE TO --

THE COURT: WELL, YOU HAVE THE NUMBER. I DON'T KNOW IF HE'S IN. I DON'T THINK HE IS TODAY. HIS OFFICE IS ON THE SECOND FLOOR. USUALLY HE PARTICIPATES VIA APPOINTMENTS, BUT I GUESS WE COULD CALL HIM AND SEE IF HE'S IN. IS THAT POSSIBLE? OR E-MAIL HIM?

THE CLERK: I'LL SEARCH THE NUMBER. YES, YOUR HONOR.

THE COURT: GIVE ME JUST A MOMENT.

(PAUSE IN PROCEEDINGS.)

THE CLERK: HE'S NOT IN TODAY. I'LL GIVE THE NUMBER.

THE COURT: YES. WE'LL GIVE YOU THE CONTACT INFORMATION. APPARENTLY HE'S NOT IN TODAY, REGRETTABLY. SO WE'LL GIVE YOU THAT. I WOULD ENCOURAGE YOU TO FOLLOW UP AND SHARE SOME OF THIS INFORMATION WITH HIM FOR GUIDANCE AND PERHAPS REFERRAL TO A LAW FIRM WHO CAN STAND IN AND REPRESENT YOU.

AS I SAID BEFORE, I'M NOT CERTAIN THAT I HAVE JURISDICTION TO HEAR THE MATTER NOTWITHSTANDING ALL OF THE HARD WORK YOU'VE DONE, TO SHOW ME IN THE DOCUMENTS THAT YOU'VE PROVIDED.

THEY DO SHOW, LET ME SAY THIS, THEY DO SHOW AN EXHIBIT, ONE OF THE THINGS THAT YOU -- THE EXHIBITS THAT YOU PROVIDED WAS INFORMATION REGARDING CONSTRUCTION WORK THAT THE STATE AND FEDERAL GOVERNMENT, I THINK, WERE GOING TO DO ON THE HARTNELL BRIDGE ROAD, I THINK, AND THAT REQUIRED, WHEN

11:32AM CONSTRUCTION IS DONE NEAR INDIAN LAND, THAT REQUIRES NOTIFICATION OF THE VARIOUS TRIBES AND NATIONS.

YOU PROVIDED ME IN YOUR EXHIBITS INFORMATION THAT SHOWS THAT WHEN THE GOVERNMENT SOUGHT TO IDENTIFY, THEY HAD YOU LISTED, AND I THINK YOUR MOTHER, LISTED AS THE TRIBAL CONTACTS, BUT IN THE DOCUMENTS IT SHOWS THAT AT LEAST FROM THEIR RECORDS, THERE WAS NO CONTACT OR NO RESPONSE MADE.

AND MY SENSE IS THAT YOU PUT THAT IN TO SHOW ME AND TO OFFER AS EVIDENCE THAT MS. MACHADO, WHO WAS TAKING THE MAIL, SUCH THAT YOU HAD NO NOTICE ABOUT THIS WORK THAT WAS BEING DONE NEAR TRIBAL LAND.

MS. SAYERS-ROODS: RIGHT.

THE COURT: AND THERE WERE SEVERAL DOCUMENTS THAT REFERENCED THAT. THESE ARE DOCUMENTS FROM THE STATE GOVERNMENT AND FEDERAL GOVERNMENT, AND THAT'S INAPPROPRIATE BECAUSE THIS DOES AFFECT TRIBAL LAND, AND YOU AS THE AUTHORIZED REPRESENTATIVE OF THE TRIBE, YOU SHOULD HAVE THE OPPORTUNITY TO COMMENT.

ONE OF THE THINGS THAT HAPPENS, WE KNOW, WHEN MAJOR CONSTRUCTION IS DONE LIKE THIS, THE STATE HAVE -- THEY HAVE ARCHEOLOGISTS AND STATE REPRESENTATIVES WHO -- THEIR JOBS ARE TO MAKE SURE AND ENSURE THAT SACRED LAND IS NOT DISTURBED, THAT IF THERE IS GOING TO BE ANY INTERFERENCE WITH INDIAN LAND, THE APPROPRIATE PARTIES ARE NOTIFIED, SACRED AREAS ARE DESIGNATED SO THERE COULD BE WORKAROUNDS, THERE ARE ALSO ARCHEOLOGY TEAMS

THAT EXIST BEFORE CONSTRUCTION IS DONE, AND DURING CONSTRUCTION THEY'RE ON SITE IN CASE THERE'S ANY DISTURBANCE OF ARTIFACTS OR ANY OTHER NATIVE ITEMS.

YES, MA'AM.

MS. SAYERS-ROODS: AS A DESIGNATED MLD, MOST LIKELY DESCENDENT, I AM ON SITE WITH THOSE ARCHEOLOGISTS AND I CONDUCT --

THE COURT: COULD YOU SLOW DOWN.

MS. SAYERS-ROODS: I AM AN MLD, MOST LIKELY DESCENDENT, AND I CONDUCT CULTURAL SENSITIVITY TRAININGS WITH THE ARCHEOLOGISTS ON SITE, THE BIOLOGISTS, AND THE CONTRACTED WORKERS, FOREMANS, AND ANY OF THE APPLICANTS. OUR TRIBE MANDATES IT.

THE COURT: RIGHT. YES.

MS. SAYERS-ROODS: SO THEY CAN ABIDE BY NAGPRA, NATIVE AMERICAN GRAVES PROTECTION AND REPATRIATION ACT, AND CEQA, CALIFORNIA ENVIRONMENTAL QUALITIES ACT, SECTION 106 AND AB 52. SO I'M ON SITE RIGHT THERE WITH THEM, AND THERE'S A LOT OF MAIL THAT IS NOT BEING RESPONDED TO.

THE COURT: RIGHT. I APPRECIATE THAT. THANK YOU FOR AUGMENTING THE RECORD FOR YOUR DUTIES. YOU HAVE KNOWLEDGE OF THIS AND YOU PARTICIPATE IN THAT, AND IT'S IMPORTANT THAT ARTIFACTS ARE NOT BROKEN, DISTURBED OR LOST, AND IT'S IMPORTANT THAT SACRED LAND IS KEPT SACRED, AND THE CONTRACTORS CAN WORK AROUND THAT. ALL OF THIS IS VERY IMPORTANT, AND IT'S AN

IMPORTANT PROCESS, AND IT SOUNDS LIKE MS. MACHADO IS, PER YOUR PLEADINGS AND PER THE INFORMATION THAT YOU'VE PROVIDED, YOU SUGGEST THAT SHE'S INTERFERING WITH THIS, TO THE DETRIMENT OF THE TRIBE AND POTENTIAL DETRIMENT TO TRIBAL LANDS AND LOSS OF ADDITIONAL TRIBAL ARTIFACTS.

SO I RECOGNIZE THAT. THANK YOU.

I THINK WE'VE GIVEN YOU THE CONTACT INFORMATION. YES. SO I'M GOING TO ENCOURAGE YOU TO REACH OUT AND LEAVE A MESSAGE, SEND AN E-MAIL, SHARE WITH HIM OUR CONVERSATION THIS MORNING, AND I WELCOME YOU TO TELL HIM THAT THE JUDGE SAID WE SHOULD TOOK AS SOON AS POSSIBLE.

ALL RIGHT. THANK YOU VERY MUCH. I DON'T THINK I NEED ANY MORE INFORMATION ON -- AS TO THE ORDER TO SHOW CAUSE THAT I SET. I MAY SEND AN ORDER OUT EXPLAINING WHAT HAPPENED AND ANY LIMITATIONS THAT I HAVE AS TO JURISDICTION AT THIS POINT, BUT IF I DON'T HAVE JURISDICTION, I -- THAT SHOULD NOT DISCOURAGE YOU FROM GOING FORWARD WITH ANY LITIGATION YOU NEED TO PURSUE TO PROTECT TRIBAL INTERESTS, AND I THINK THE COURT'S LAWYER CAN GIVE YOU THOUGHTS AND SUGGESTIONS ON THAT.

IF HE TELLS ME THAT AND TELLS YOU THAT YOU SHOULD COME BACK TO COURT FOR SOME OTHER REASON, I WOULD BE HAPPY TO RECEIVE YOU, AND WE CAN HAVE THAT CONVERSATION.

ALL RIGHT. THANK YOU. THANK YOU, SIR, FOR BEING HERE.

MR. PETERSON: THANK YOU, YOUR HONOR.

MS. SAYERS-ROODS: THANK YOU, YOUR HONOR.

11:36AM THE COURT: YOU'RE WELCOME.

11:36AM (COURT CONCLUDED AT 11:36 A.M.)